1 | Stella Havkin, SBN #134334
HAVKIN & SHRAGO
2 | ATTORNEYS AT LAW
5950 Canoga Avenue, Suite 400
3 | Woodland Hills, California 91367
Telephone: (8181) 999-1568
4 | Facsimile:  (818) 305-6040
Email: stella@havkinandshrago.com
5 |

6 | Attorneys for Debtor
NAZARET KECHEJIAN
7 |

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SAN FERNANDO VALLEY DIVISON**

12 |

13 | In re

14 | NAZARET KECHEJIAN,

15 |                    Debtor.

16 | _____

17 | NAZARET KECHEJIAN,

18 |                    Plaintiff,
              v.

19 | GREG MKRCHYAN, an individual, aka
GARIK MKRCHYAN, aka GHEGHAM

20 | MKRTCHYAN, aka GHEGHAM TER-
MIKRTCHYAN; KIRILL KIZYUK, an

21 | individual, PRIME CAPITAL GROUP, INC, a
California Corporation; MKRTCHYAN

22 | INVESTMENTS, L.P., a California Limited
Partnership; ARTHUR ARISTAKESYAN, an

23 | individual; PHANTOM PROPERTIES, LLC,
a Nevada limited liability company; DMITRI

24 | LIOUDKOVSKI, an individual; LDI
VENTURES, LLC., a California limited

25 | liability company,

26 |                    Defendants.

27 |

28 |

Case No.: 1:18-bk-10828-MT

Chapter 13

Adv. No.

**COMPLAINT FOR:**

**(1) Violation of California High Cost
Mortgage Law;**
**(2) Violation of TILA;**
**(3) Violation of HOEPA;**
**(4) Violation of California Civil Code
§1632;**
**(5) Unconscionability (Civil Code
§1688 et. seq);**
**(6) Intentional Misrepresentation;**
**(7) Fraud;**
**(8) Unfair Business Practices
(BPC §17200)**
**(9) Declaratory Relief**

1

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY JUDGE, ELIZABETH ROJAS CHAPTER 13 TRUSTEE, AND ALL INTERESTED PARTIES:**

Debtor and Plaintiff Nazaret Kechejian ("Plaintiff" or "Debtor") alleges against Defendants, and each of them, as follows:

## JURISDICTION AND PARTIES

1.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), and 1334(a), in that this proceeding arises under title 11 of the United States Code,  and arises in and is related to a chapter 13 bankruptcy case.

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1409.

4.      Plaintiff Nazaret Kechejian is the Debtor in the bankruptcy estate (the "Estate") created in the instant Chapter 13 bankruptcy case pending in the San Fernando Valley Division of the United States Bankruptcy Court for the Central District of California titled as *In re Nazaret Kechejian*, bearing case number 1:18-bk-10828-MT (the Bankruptcy Case") and initiated this case by filing a voluntary petition on April 2, 2018(the "Petition Date").

5.      Plaintiff is informed and believes that Defendant Prime Capital Group ("Prime") is, now, and at all relevant times herein, a corporation duly organized and incorporated under the laws of the State of California, with its principal place of business in Burbank, California.  Prime is a licensed real estate broker with the Bureau of Real Estate (BRE License No. 01920305) and with a Mortgage Loan Originator License Endorsement (NMLS ID No. 964619).

6.      Plaintiff is informed and believes that Defendant Greg Mkrchyan aka Garik Mkrchyan aka Ghegham Mkrtchyan aka Ghegham Ter-Mikrtchyan ("Mkrchyan") is, and at all times herein, an individual residing and conducting business in the Central District of California, and which he did and does business in the State of California relevant hereto and is a licensed

Complaint

1  salesperson with the Bureau of Real Estate (BRE License No. 01351133). Mkrchyan is employed

2  by Prime.

3      7.      Plaintiff is informed and believes that Defendant Kirill Kizyuk ("Kizyuk") is an

4  individual residing and conducting business in the Central District of California, and which he did

5  and does business in the State of California relevant hereto, and is a licensed real estate broker

6  with the Bureau of Real Estate (BRE License No. 01442158), and with a Mortgage Loan

7  Originator License Endorsement (NMLS ID No. 396123). Kizyuk is the designated officer for

8  Prime.

9      8.      Plaintiff is informed and believes that Defendant Mkrtchyan Investments, L.P.  is,

10  now, and at all relevant times herein, a limited partnership organized and existing under the laws

11  of the State of California, with its principal place of business in Granada Hills, California.

12      9.      Plaintiff is informed and believes that Defendant Arthur Aristakesyan

13  ("Aristakesyan") is, and at all times herein, an individual residing in the State of Nevada, who is

14  not authorized to do business in the Central District of California.

15      10.      Plaintiff is informed and believes that Defendant Phantom Properties, LLC

16  ("Phantom") is now, and at all times herein, a limited liability company under the laws of the State

17  of Nevada, with its principal place of business in Las Vegas, Nevada, and is not authorized to do

18  business in the Central District of California.

19      11.      Plaintiff is informed and believes that Defendant Dmitri Lioudkovski ("Dmitri") is,

20  and at all times herein, an individual residing and doing business in the Central District of

21  California.

22      12.      Plaintiff is informed and believes that Defendant LDI Ventures, LLC ("LDI") is

23  now, and at all times herein, a limited liability company organized and existing under the laws of

24  the State of California, with its principal place of business in Beverly Hills, California.

25                          **GENERAL ALLEGATIONS**

26      13.      This is an action for rescission and damages arising out of three illegal and void

27  Notes and Deeds of Trust recorded against Plaintiff's residential property.  The purported loans

28

Complaint

1  and the actions taken by the Defendants are the product of unfair business and predatory lending

2  practices.

3      14.    At all times relevant herein, Plaintiff was the owner of a single family residence in

4  Los Angeles County whose address is 14725 Marlin Place, Van Nuys, California 91405 (the

5  "Property").  At all times relevant herein, the Property was Plaintiff's primary residence.

6      15.    In November 2015, Plaintiff was introduced to Kizyuk and Mkrchyan who

7  promised Plaintiff would qualify for a good home mortgage loan with a good rate.

8      16.    In order to obtain the required loan, Prime requested Plaintiff enter into an

9  Agreement to Procure Lender regarding the Property wherein Prime agreed to act as agent for

10  Plaintiff to "find and procure a lender to make Borrower a loan."   About this time, Kizyuk met in

11  person with Plaintiff to complete the loan application and the required loan documents

12  (collectively the "Loan Documents").  During the preparation of the Loan Documents, Kizyuk

13  advised Plaintiff not to list the Property as his primary residence but as an investment property.

14  Plaintiff is unaware of the reason that he was instructed to complete the Loan Documents in this

15  manner but followed Kizyuk's instructions as Kizyuk was being hired for his expertise.

16      17.    Plaintiff is foreign born and Armenian is his native language. The Loan Documents

17  were in written and prepared in English.  While Plaintiff can read English, he is not competent in

18  in his understanding or comprehension of either oral or written English language.  Kizyuk knew of

19  Plaintiff's limited English language abilities.  The Loan Documents were not provided or

20  translated in Armenian in violation of California *Civil Code* §1632.

21      18.    On or about November 20, 2015, Prime procured Mktrchyan Investments, L.P. to

22  loan Plaintiff the sum of $50,000 which was memorialized by a promissory note dated November

23  20, 2015 (the "Mkrtchyan Loan").

24      19.    Defendants never explained the full terms of the Mkrtchyan Loan, including but not

25  limited to the rate of interest, how the interest rate would be calculated, the payment schedule, or

26  the risks and disadvantages of the loan.

27

28

20.     Certain fees in obtaining the loan were also not explained to Plaintiff, including but not limited to processing fees, loan origination fees, notary fees, wire transfer fee, documentation preparation fee, credit report fee, appraisal fees, and loan tie fees.

21.     The Mkrtchyan Loan was ambiguous and uncertain regarding the terms but Plaintiff signed them in reliance on representations as well as the trust and confidence that he placed in Defendants Prime, Kizyuk, and Mktrchyan Investments, L.P.

22.     As of about November 20, 2015, Plaintiff's understanding of the Mkrtchyan Note was that it was a six (6) month loan term with fully amortized monthly payments of $8,676.65 beginning January 1, 2016.  The Mkrtchyan Note contained a 10% penalty for each payment made more than 10 days after the due date.

23.     Despite the fact the Mkrtchyan Note provided for fully amortized payments, Prime had Plaintiff execute an interest only addendum on the November 20, 2015 which provided that Plaintiff would pay interest only for the first five months with a balloon payment due on June 1, 2016 in the amount of $50,582.92.

24.     On or about November 23, 2015, Prime procured Phantom Properties LLC. to loan Plaintiff the sum of $55,000 which was memorialized by a promissory note dated November 23, 2015 (the "Phantom Loan").

25.     Once again, Defendants never explained the full terms of the Phantom Loan, including but not limited to the rate of interest, how the interest rate would be calculated, the payment schedule, the risks and disadvantages of the loan.

26.     Certain fees in obtaining the loan were also not explained to Plaintiff, including but not limited to processing fees, loan origination fees, notary fees, wire transfer fee, documentation preparation fee, credit report fee, appraisal fees, and loan tie fees.

27.     Just like the Mkrtchyan Loan, the Phantom Loan was ambiguous and uncertain regarding the terms but Plaintiff signed them in reliance on representations and the trust and confidence placed in Defendants Prime, Kizyuk, and Phantom Properties, LLC.

28.     As of about November 23, 2015, Plaintiff's understanding of the Phantom Note was that it was a six (6) month loan term with fully amortized monthly payments of $9,544.32

1  beginning January 1, 2016.  The Phantom Note contained a 10% penalty for each payment made
2  more than 10 days after the due date.

3      29.    Despite the fact the Phantom Note provided for fully amortized payments, Prime
4  had Plaintiff execute an interest only addendum on the November 23, 2015 which provided that
5  Plaintiff would pay interest only for the first five months with a balloon payment due on June 1,
6  2016 in the amount of $55,641.21.

7      30.    As part of the November 20, 2015 closing, Plaintiff was charged points ant fees
8  totaling $6,385 for the $50,000 Mkrtchyan Loan, $5,000 of which was paid to Prime as a
9  brokerage commission. This amounted to 10% of the loan amount.

10     31.    Additionally, as part of the November 23, 2015 closing on the Phantom Loan,
11  Plaintiff was charged points and fees totaling, $6,500, $4,400 of which was paid to Prime as a
12  brokerage commission, which amounted to 8.46%.    After all costs were paid, Plaintiff received a
13  total of $89,643 from the $105,000 in loans.

14     32.    After signing the loan documents for the Mkrtchyan and Phantom Loans, Plaintiff
15  discovered a number of loan terms that were contrary to the representations made by Defendants
16  and operated to make it impossible for Plaintiff to meet his obligations under the loans, including,
17  but not limited to a very high interest rate and short-term balloon payments.

18     33.    Plaintiff had no ability to make the balloon payments on June 1, 2016, but that was
19  no surprise given the contents of the loan application and considering Plaintiff declared $8,000 per
20  month in gross income as a cab driver with an average credit score in the low 500's.

21     34.    Defendants knew or should have known that Plaintiff did not have sufficient
22  income to repay the Mkrtchyan and Phantom Loans.  Thus, it was no surprise on or about June 1,
23  2016, when Mkrchyan offered to extend the loans from June 1, 2016 to March 31, 2017 in
24  exchange for extension fees of $12,000, over 10% of the loan balances, and attorneys fees of
25  $12,700, also in excess of 10% of the loan balances.

26     35.    Recognizing that Plaintiff did not have and never could have the ability to repay the
27  alleged $144,319.60 balance due from the Mkrtchyan and Phantom Loans, Mkrchyan and Prim
28  offered to originate a consolidated loan.

Complaint

36.     The consolidation loan was dated May 1, 2017 and the lender was LDI in the principal amount of $165,000, which amount included the payoff for the Mkrtchyan and Phantom Loans plus another $15,000 in costs and fess to Prime (the "LDI Loan").

37.      The LDI Loan had identical repayment terms as the Mkrtchyan and Phantom Loans.  The interest rate was 13.990%, a term of 6 months, with fully amortized monthly payments.  The LDI note contained a 10% penalty for each payment made more than ten days after the due date.  Also, Prim had Plaintiff execute an interest only addendum on the same date as the note which provides that interest only will be paid for the first five months with a balloon payment due on December 1, 2017.

38.     From the date of origination of the Mkrtchyan Loan, Defendants knew the loan was virtually certain to result in the loss of equity and to end in default as it was predictably unsustainable for Plaintiff on his modest income.

39.     Through repeated misrepresentations and inaccurate disclosures, Defendants prevented Plaintiff from comprehending the truly destructive nature of the loans.  Moreover, Defendants knew or should have known that the mortgages were unsuitable for Plaintiff, who they knew or should have known lacked the ability to repay the loan.

40.     Defendants' fraudulent and deceptive actions violated numerous federal and state consumer protection laws, including but not limited to the Truth in Lending Act; the Home Ownership and Equity Protection Act; and common law doctrines of fraud

### FIRST CLAIM FOR RELEIF

**(Violation of California High Cost Mortgage Law, California Financial Code§ 4970 et seq.**

**Against Defendants Prime, Mktrchyan Investments, L.P. Phantom, LDI)**

41.     Plaintiff refers to and, by this reference, incorporates and alleges herein, each and all the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

42.     California *Financial Code* §4970 et seq. mirrors federal statutes including the Truth in Lending Act, 15 U.S.C. §1638; Regulation Z, 12 C.F.R. §1026 et seq.; Home Owner Equity Protection Act, 15 U.S.C. § 1639 (b)(l), that require borrowers who obtain covered loans from a lender, i.e. real estate loan under $250,000 secured by the borrower's principal

1 residence, to receive certain mandatory disclosures and that the lender consider the borrower's

2 ability to repay the loan. Defendants did neither here.

3       43.     As a result of Defendants' failure to comply with California High Cost Mortgage

4 Law, Plaintiff is entitled to the remedies set forth in California *Financial Code* §4978, namely an

5 avoidance of all provisions of the loan that violate the law, actual damages, attorneys fees,

6 punitive damages and a civil penalty of at least $15,000. Additionally, failure to provide the

7 required disclosures to Plaintiff also give him the right to rescind the loan transaction.

8 **SECOND CLAIM FOR RELEIF**

9 **(Violation of Truth in Lending Act Against All Defendants)**

10       44.     Plaintiff refers to and, by this reference, incorporates and alleges herein, each and

11 all the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

12       45.     Plaintiff is informed and believes, and thereon alleges, that Defendants, in concert

13 with its agents, have engaged in acts or practices in violation of the Truth in Lending Act

14 ("TILA"), 15 U.S.C. §§1601 *et seq.,* and its implementing regulations, Federal Reserve Board

15 Regulation Z, 12 C.F.R.§226.

16       46.     Pursuant to TILA § 1602(g), a "creditor" is defined as a person who both (1)

17 regularly extends consumer credit which is payable by agreement in more than four installments or

18 for which the payment of a finance charge is or may be required; and (2) is the person to whom the

19 debt arising from the consumer credit transaction is initially payable on the face of the evidence of

20 indebtedness.

21       47.     In pertinent part, pursuant to Regulation Z, § 1026.2(a)(17), a person regularly

22 extends consumer credit if it extended credit more than five times for transactions secured by a

23 dwelling in the preceding calendar year. Pursuant to TILA § 1602(g), a "creditor" also means any

24 person who originates two or more high-cost mortgages in any 12-month period (as defined by

25 TILA § 1602(bb)).

26       48.     TILA §1602(bb)(1)(A) and Regulation Z §1026.32(a)(1) define the term "high cost

27 mortgage" to mean any consumer credit transaction that is secured by the consumer's principal

28 dwelling that meets one of the definitions of "high-cost mortgage."

49.    TILA §1602(bb)(1)(A)(i)(II) and Regulation Z §1026.32(a)(1)(i)(c) treat a consumer credit transaction as a "high-cost" mortgage if the transaction secured by a subordinate or junior mortgage on the consumer's principal dwelling, the annual percentage rate at consummation of the transaction will exceed by more than 8.5 percentage points the average prime offer rate, as defined in Section 1639c(b)(2)(B) of this title, for a comparable transaction.

50.    As a result of the subject transactions, Defendants acquired an interest in the Plaintiff's primary residence that secures payment or performance of an obligation. Plaintiff's annual percentage rate ("APR") for the Mkrtchyan Loan was 42.913%, and the Phantom Loan was 40.809%.  The average prime rate on November 23, 2015 was 3.2% and on May 1, 2017 it was 3.41%.[1]  Thus, for two of the loans the APR exceeded by more than 8.5% points the average prime offer rate at the time of each loan.   Because of the exceedingly high APR, at least two of Plaintiff's loans are considered a "high-cost" mortgage.

51.    Plaintiff is informed and believes, and thereon alleges, this consumer credit transaction violated TILA and Regulation Z because it failed to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §163(a) and Regulation Z §226.17(a) and therefore failed to deliver all "material" disclosures as required by the TILA and Regulation Z, including the following:

      a.   failing to disclose properly and accurately the "amount financed," in violation of 15 U.S.C. §1638(a)(2) and 12 C.F.R. §226.18;

      b.    failing to disclose properly and accurately the "finance charge," in violation of 15 U.S.C. §1638(a)(3) and 12 C.F.R. §226.18;

      c.   failing to disclose properly and accurately the "annual percentage rate," in violation of 15 U.S.C. §1638(a)(4) and 12 C.F.R. §226.18;

      d.   failing to disclose properly and accurately the "total of payments," in violation of 15 U.S.C. §1638(a)(5) and 12 C.F.R. §226.18(h); and

      e.   failing to disclose properly and accurately the number, amount, and due dates or

---

[1] Plaintiff respectfully requests that the Court take judicial notice of the rates obtained from the website of the Federal Financial Institutions Examination Council (https://www.ffiec.gov).

Complaint

1    period of payments scheduled to repay the obligation, in violation of 15 U.S.C.

2    §1638(a)(6) and 12 C.F.R. §226.18(g).

3    52.    The TILA violations described at ¶51 above provide Plaintiff an extended right to

4    rescind the loans held by Defendants pursuant to 15 U.S.C. §1635 and 12 C.F.R. §226.23.

5    Additionally, Plaintiff has not been provided with the Truth in Lending Disclosure Statement from

6    LDI at Plaintiff's closing.  However, Plaintiff believes that LDI's Loan is a high-cost mortgage

7    like the other loans.

8    53.    As a result of Defendants' violations of TILA §§1632 and 1638 and Regulation Z,

9    Plaintiff is entitled to the (i) the return of any money or property that has been given to anyone in

10   connection with the loan transactions and the termination of Defendants' security interest in the

11   Property; (ii) actual damages in an amount to be determined at trial; (iii) statutory damages  as

12   provided by 15 U.S.C. §1640; and (iv) the costs of the action, together with reasonable attorneys'

13   fees as determined by the court.

14   54.    Pursuant to TILA §1602(cc)(5), the term "residential mortgage loan" means any

15   consumer credit transaction that is secured by a mortgage, deed of trust, or other equivalent

16   consensual security interest on a dwelling or on residential real property that includes a dwelling.

17   55.    Each of Plaintiff's loans are considered a residential mortgage loan

18   pursuant to TILA because each loan is secured by a lien on his dwelling or on residential real

19   property that includes a dwelling.

20   56.    At all relevant times, Defendant Prime was a mortgage originator as

21   defined by TILA §1602(cc)(2) because: (a) it was directly or indirectly compensated for taking

22   Plaintiff's loan application; (b) it assisted Plaintiff in obtaining or applying to obtain a loan; or (c)

23   it offered or negotiated the terms of Plaintiff's loans.  Prime is also a mortgage originator because

24   it represented to the public, through advertising and other means of communication, that it can and

25   will provide those services.

26   57.    Prime is a "creditor" as defined by TILA because Prime is a mortgage originator,

27   each of Plaintiff's loans is a high-cost mortgage and Prime originated two or more of the loans in

28   a 12-month period relevant hereto.

Complaint

58.    Because Prime is considered a "creditor" under TILA, pursuant to TILA § 1631(b) and Regulation Z §1026.17(d), Prime is liable for any TILA violations in connection with all of Plaintiff's loans.

59.    TILA §1639c(a)(1) prohibits a creditor from making a residential mortgage loan unless the creditor makes a reasonable good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan according to its terms.

60.    Pursuant to TILA §1639c(a)(3), a consumer's ability to repay a residential mortgage loan must include consideration of the consumer's credit history, current income, expected income, current obligations, debt-to-income ratio, employment status, and other financial resources *other than the consumer's equity in the dwelling or real property that secures repayment of the loan*.  Pursuant to TILA §1639c(a)(4), a creditor making a residential mortgage loan must verify amounts of income or assets that a creditor relies on to determine repayment ability, including expected income or assets, by reviewing the consumer's W-2s, tax returns, payroll receipts, financial institution records, or other third-party documents that provide reasonably reliable evidence of the consumer's income or assets.

61.    Defendants did not consider Plaintiff's credit history, income, employment, debt-to-income ratio or financial resources in deciding whether to approve his loans and made such determination almost entirely on the basis of the equity in his property securing each of the loans.

62.    As a result, Defendants violated the provisions of TILA § 1639c(a)(1) because they made residential mortgage loans to Plaintiff without making a reasonable good faith determination of his ability to pay.

63.    As a result of Defendants' violations of TILA § 639c(a)(1), Plaintiff is entitled to the sum of: (i) any actual damages sustained by Plaintiff ; (ii) statutory damages in such amount as the court may allow; (iii) an amount equal to the sum of all finance charges and fees paid by Plaintiff; and (iv) the costs of the action, together with reasonable attorneys' fees as determined by the court.

1                 **THIRD CLAIM FOR RELEIF**

2      **(Violation of Home Ownership and Equity Protection Act Against All Defendants)**

3          64.      Plaintiff refers to and, by this reference, incorporates and alleges herein, each and

4 all the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

5          65.      The Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §1639, is

6 an amendment to TILA and offers further protections for high rate mortgages, as defined by 15

7 U.S.C. §1602(aa)(1)(B)(i), Federal Reserve Board Regulation Z, 12 C.F.R §226.32. 69.

8          66.      A mortgage that is a credit transaction secured by the consumer's principal

9 dwelling and whose "total points and fees" exceed eight percent of the total loan amount is a high

10 rate mortgage within the meaning of the HOEPA. 15 U.S.C. §1602(aa)(1)(B)(i). The definition of

11 "points and fees" includes "all compensation paid to mortgage brokers." 12 C.F.R.

12 §226.32(b)(1)(ii) (emphasis added).

13          67.      The subject consumer credit transaction was secured by Plaintiff's principal

14 residence.

15          68.      The subject loan transaction is subject to HOEPA because, among other things, the

16 total points and fees payable by Plaintiff exceeded eight percent of the total loan amount. Plaintiff

17 was charged points and fees totaling $6,385 for the Mkrtchyan Loan, $5000 of which was paid to

18 Prime as a brokerage commission – 10% of the loan amount. For the Phantom Loan, Plaintiff was

19 charged points and fees totaling $6500, $4,400 of which was paid to Prime as a brokerage

20 commission – 8.46% of the loan amount. See Official Staff Commentary on Regulation Z

21 §226.32(a)(1)(ii)-1.

22          69.      The subject consumer credit tradition violated HOEPA and Regulation Z by:

23             a.    failing to provide Plaintiff with the disclosures required under HOEPA at least

24                three business days prior to the consummation of the transaction, in violation of 15

25                U.S.C. §1639(a) and (b) and 12 C.F.R. §§226.32(c); and

26             b.    extending credit without regard to Plaintiff's ability to pay the debt, in violation of

27                15 U.S.C. §1639(h) and 12 C.R.F. §226.34(a)(4).

28          70.      HOEPA §1639(a)(1) requires every creditor extending credit on High Cost

1   Mortgages to provide the following disclosures, in "conspicuous" type, not less than three

2   business days prior to closing:

3   •  "You are not required to complete this agreement merely because you

4   received these disclosures or have signed a loan application."

5   •  "If you obtain this loan, the lender will have a mortgage on your home.

6   You could lose your home and any money you have put into it, if you do

7   not meet your obligations under the loan."

8   71.   Defendants did not furnish the above required disclosures to Plaintiff at any time

9   prior to Plaintiff entering into any of the loans.

10   72.   HOEPA §1639(h) prohibits a creditor from engaging in a pattern or practice of

11   extending high-cost mortgages to borrowers based upon the borrower's collateral without regard

12   to repayment ability, including current and expected income, current obligations, and employment.

13   73.   Defendants did not consider Plaintiff's credit history, income, employment, debt-

14   to-income ratio or financial resources in deciding whether to approve his loan and made such

15   determination almost entirely on the basis of his equity in property that secured each loan.

16   74.   As a result, Defendants violated the provisions of HOEPA §1639(h) because

17   Defendants engaged in a pattern and practice of extending high-cost mortgages to borrowers, such

18   as Plaintiff, based almost entirely on collateral without regard to repayment ability.

19   75.   As a result of Defendants' multiple violations of HOEPA, Plaintiff is entitled to the

20   sum of: (i) any actual damages sustained by Plaintiff; (ii) statutory damages in such amount as the

21   court may allow; (iii) an amount equal to the sum of all finance charges and fees paid by Plaintiff;

22   and (iv) the costs of the action, together with reasonable attorneys' fees as determined by the

23   court.

24   **FOURTH CLAIM FOR RELEIF**

25   **(Violation of California Civil Code §1632 (Against All Defendants)**

26   76.   Plaintiff refers to and, by this reference, incorporates and alleges herein, each and all

27   the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

28   77.   Plaintiff is informed and believes, and thereon alleges that Defendants engaged in a

Complaint

trade or business as described in California Civil Code §1632 and negotiated the loan contracts primarily in English, either orally or in writing, and are required to provide said contracts to be translated into Armenian.

78.     Plaintiff's primary language is Armenian and during the course of the loan negotiations, no pertinent documents were provided to him in Armenian or translated into Armenian for him to understand.

79.     Based on the foregoing violations, Plaintiff is entitled to rescind the contracts with Defendants.

### FIFTH CLAIM FOR RELEIF

**(Unconscionability Pursuant to California *Civil Code* §1688 *et seq.* Against All Defendants)**

80.     Plaintiff refers to and, by this reference, incorporates and alleges herein, each and all the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

81.     Defendants breached their obligations under the law and under the loan agreements through their acts and omissions as alleged herein.

82.     Based on the following:
   a.   the state and federal statues implicated by Defendants alleged failure to make mandatory loan disclosures, which, if made, would have allowed Plaintiff to rescind the loan;
   b.   the violations of Califomia's high cost mortgage laws, TILA, HOEPA and Regulation Z alleged herein;
   c.   the loan documents were not provided in Armenian in violation of California *Civil Code* §1632.

The foregoing caused the loan contracts to be improperly formed, and effectively the product of mistake and fraud, and unfair business practices and therefore, the loan contracts under *Civil Code* §1688 are extinguished ab initio as though they never came into existence; and the terms cease to be enforceable.

83.     Plaintiff seeks rescission of the loan contracts because they are void due to illegality in that they are contracts made in violation of both state and federal regulatory statutes. The loan

1  contracts are void as contrary to public policy and courts will not lend their aid to enforcement of

2  an illegal contract.

3  **SIXTH CLAIM FOR RELEIF**

4  **(Intentional Misrepresentation Against Defendants Kizyuk, Mkrchyan and Prime)**

5  84.    Plaintiff refers to and, by this reference, incorporates and alleges herein, each and all

6  the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

7  85.    On or about November 2015, Plaintiff refinanced his residence in Los Angeles

8  County, located at 14725 Marlin Place, Van Nuys, California 91405.

9  86.    Plaintiff utilized the services of Defendant Prime to obtain a loan for the Property.

10  Kizyuk falsely and orally advised and represented to Plaintiff that he was required not to list the

11  Property as his primary residence but as investment property.  Plaintiff was unaware of the reason

12  that he was instructed to complete the Loan Documents in this manner but followed Kizyuk's

13  instructions and professional advice.

14  87.    Additionally, Mkrchyan, Kizyuk and Prime directed Plaintiff to execute false

15  declarations of non-owner occupancy.

16  88.    Mkrchyan's and Kizyuk's representations and statements to Plaintiff were false, and

17  when both Mkrchyan and Kizyuk made them, when they knew them to be false.

18  89.    The representations which Mkrchyan and Kizyuk made were material and were

19  justifiably relied upon by Plaintiff in entering into the Loan Agreements. Plaintiff signee the Loan

20  Documents in reliance on Kizyuk's representations and the trust and confidence that he placed in

21  Defendants Kizyuk, Mkrchyan and Prime.

22  90.    As a proximate result of Defendants' wrongful conduct, Plaintiff has been damaged

23  in a sum to be determined according to proof at time of trial.

24  91.    In doing the acts herein alleged, Defendants acted with oppression, fraud, and

25  malice, entitling Plaintiff to punitive damages in amount to be determined at the time of trial.

26  **SEVENTH CLAIM FOR RELEIF**

27  **(Fraud Against Defendants Mkrchyan, Kizyuk and Prime)**

28  92.    Plaintiff refers to and, by this reference, incorporates and alleges herein, each and all

Complaint

1    the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

2        93.    Defendants fraudulently, intentionally and knowingly induced Plaintiff to enter into

3    the subject mortgage transactions by misrepresenting and/or failing to provide material

4    information, including the following:

5            a.   misrepresenting to Plaintiff that he could afford the subject loans;

6            b.   misrepresenting to Plaintiff that the declarations of certification of non-owner

7                 occupancy were necessary and required;

8            c.   misrepresenting to Plaintiff that the declarations that the real property security

9                 was held as an investment property and is not, and would not be occupied by

10                Plaintiff:

11           d.   misrepresenting to Plaintiff that certificates of business purpose of the loan was

12                required;

13           e.   misrepresenting to Plaintiff that he would receive the loans but not making the

14                loans in the first place and the charging of excessive interest and fees;

15           f.   misrepresenting that the subject loans would provide him a benefit.

16       94.    Plaintiff suffered serious injury as the proximate result of his reliance on the

17   Defendants misrepresentations and failures to disclose.

18       95.    As a result of the aforesaid fraud, the loan transactions should be declared void, and

19   the security interest crested under the loans should be terminated.  Based upon the Defendants'

20   fraudulent conduct, Plaintiff should be entitled to actual damages and punitive damages.

21                          **EIGHTH CLAIM FOR RELEIF**

22   **(Unfair Business Practices Pursuant to California Business & Professions Code §17200**

23                          **Against All Defendants)**

24       96.    Plaintiff refers to and, by this reference, incorporates and alleges herein, each and

25   all the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

26       97.    Plaintiff is informed and believes, and thereon alleges that, at all times herein

27   mentioned, each of the Defendants sued herein was the agent and/or employee of each of the

28   remaining Defendants and was at all times acting within the purpose and scope of such agency and

Complaint

1  employment.

2         98.       Beginning in or about November 2015, and continuing to the present time,

3  Defendants committed acts of unfair competition as defined by *Business and Professions Code*

4  §17200 by engaging in acts including the following practices:

5         a.   By failing to provide A Mortgage Loan Disclosure Statement (MLDS) (RE 882, RE

6              883, or RE 885), or an alternative that fully complies with §10240(c);

7         b.   By engaging in misleading practices to inducing vulnerable borrowers such as

8              Plaintiff to enter into onerous loans is unlawful and constitute violations of

9              *Financial Code* §4970 *et seq.*;

10        c.   By failing to inquire into Plaintiff's ability to repay the loan and further failed take

11             into adequate consideration plaintiff's income, obligations, employment status and

12             other financial resources in order to form a reasonable belief that plaintiff had the

13             ability to repay the loan in violations of *Financial Code* §4970 *et seq.*;

14        d.   In violation of the *Financial Code* §4973(I)(1), Defendants, through its agents and

15             employees, willfully and intentionally engaged in a predatory practice of asset based

16             lending that set up the plaintiff to default and lose his equity in his home; and

17        e.   By failing to provide Plaintiff with truthful and accurate disclosure and information

18             about the loan.

19        99.       These acts and practices, as described in the previous paragraphs, violate *Business*

20  *and Professions Code* §17200 because their policies and practices described above constitute

21  unlawful business acts within the meaning of *Business and Professions* Code §17200.

22        100.      The harm to Plaintiff and members of the general public outweighs the utility of

23  Defendants' policy and practices and consequently constitute unlawful business acts within the

24  meaning of *Business and Professions Code* §17200.

25        101.      Further, the foregoing conduct threatens an incipient violation of a consumer law,

26  including or violates the policy or spirit of such law or otherwise significantly threatens or harms

27  competition.  Defendants' practices described above are likely to mislead the general public, and

28  therefore, constitute a fraudulent business act of practice within the meaning of *Business and*

Complaint

1 | *Professions Code* §17200.

2 |     102.    Plaintiff is informed and believes and thereon alleges that as to these unlawful,

3 | unfair and fraudulent business practices, the remedies at law are inadequate. Plaintiff is informed

4 | and believes, and thereon alleges that the above unlawful, unfair and fraudulent business practices

5 | are of a continuing nature and are widespread practice engaged in by defendants so as to boost

6 | profits.

7 |     103.    Plaintiff requests an injunction against Defendants be issued to enjoin them from

8 | continuing to engage in each and every of the unfair, unlawful and fraudulent conduct alleged

9 | above.

10 |     104.    Plaintiff requests that the Court order restitution of relief requiring Defendants to

11 | disgorge the profits illegally and unfairly earned by Defendants as a result of such unfair business

12 | practices, and for an order to cancel any and all Notes and the Deeds of Trust in the possession of

13 | Defendants.

14 |     105.    As a result of the aforesaid conduct of Defendants, Plaintiff has incurred attorney's

15 | fees and have been harmed and damaged in an amount according to proof and have lost the equity

16 | in the Property.

17 |     106.    Plaintiff further requests an attorney's fees award pursuant to California *Civil Code*

18 | § 021.5 upon prevailing on this claim.

19 | **NINTH CLAIM FOR RELEIF**

20 | **(Declaratory Relief Against All Defendants)**

21 |     107.    Plaintiff refers to and, by this reference, incorporates and alleges herein, each and

22 | all the allegations set forth in Paragraphs 1 through 40 inclusive, of this Complaint.

23 |     108.    An actual controversy has arisen and now exists between Plaintiff and Defendants

24 | concerning their respective rights and duties pertaining to the subject Property and the described

25 | transactions. Defendants contend that a breach of obligation under loan agreement secured by the

26 | deed of trust has occurred in that Plaintiff failed to make its monthly mortgage payments.  Plaintiff

27 | contends that they are able to retain possessory rights in the property based on the intentional

28 |

Complaint

1  misrepresentations as set forth herein and lack of disclosure of material information in the loan

2  application process.

3        109.    Plaintiff requests a judicial determination and declaration of rights of the parties.

4  Such a determination is appropriate at this time so that Plaintiff may determine their rights and

5  duties.

6        **WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

7  <u>**ON THE FIRST CLAIM FOR RELIEF**</u>

8        1.    For actual damages in an amount to be proven at trial;

9        2.    For punitive damages in an amount to be proven at trial.

10  <u>**ON THE SECOND AND THIRD CLAIM FOR RELIEF**</u>

11        1.    For rescission;

12        2.    For actual damages in an amount to be proven at trial;

13        3.    For statutory damages in such amount to be proven at trial;

14        4.    For an amount equal to the sum of all finance charges and fees paid by Plaintiff;

15  <u>**ON THE FOURTH CLAIM FOR RELIEF**</u>

16        1.    For rescission;

17        2.    For actual damages in an amount to be proven at trial;

18  <u>**ON THE FIFTH CLAIM FOR RELIEF**</u>

19        1.    For restitution;

20  <u>**ON THE SIXTH CLAIM FOR RELIEF**</u>

21        1.    For compensatory damages in an amount to be proven at trial;

22        2.    For general damages in amount to be proven at trial;

23        3.    For punitive damages in an amount to be proven at trial;

24  <u>**ON THE SEVENTH CLAIM FOR RELIEF**</u>

25        1.    For general and special damages in amount to be proven at trial;

26        2.    For punitive and exemplary damages;

27  <u>**ON THE EIGHTH CLAIM FOR RELIEF**</u>

28        1.    For general and special damages in amount to be proven at trial;

**ON THE NINTH CLAIM FOR RELIEF**

1.      For a declaration of rights of the parties relative to the loans and the Property,
including that Defendants have no ownership in the Property, that the loans and
deeds of trust are void;

**ON ALL CLAIMS FOR RELIEF**

1.      For attorney's fees and costs of suit incurred herein.

2.      For such other and further relief as the Court may deem just and proper.

DATED: September 1, 2018                    HAVKIN & SHRAGO


                                           By:  /s/ Stella Havkin_____
                                                STELLA HAVKIN
                                                Attorneys for Debtor and Plaintiff
                                                Nazaret Kechejian

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br><br>NAZARET KECHEJIAN | **DEFENDANTS**<br><br>GREG MKRCHYAN, an individual, et. al. see attachment. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br><br>Havkin & Shrago Attorney at Law<br>5950 Canoga Avenue, #400, Woodland Hills, CA 91367 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor       ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor       ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

DECLARATORY RELIEF 11 U.S.C. [§105(a) and 28 U.S.C. 2201]; TURNOVER [11 U.S.C. §542]; SUBSTANTIVE
CONSOLIDATION, ACCOUNTING; AVOIDANCE OF FRAUDULENT TRANSFER, RECOVERY OF AVOIDED
TRANSFERS, PRELIMINARY AND PERMANENT INJUNCTION

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
    actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

Rescission, damages and punitive damages.


American LegalNet, Inc.
www.FormsWorkFlow.com

## ATTACHMENT TO ADVERSARY COVERSHEET

Additional defendants:

aka GARIK MKRCHYAN, aka GHEGHAM MKRTCHYAN, aka GHEGHAM TER-
MIKRTCHYAN; KIRILL KIZYUK, an individual, PRIME CAPITAL GROUP, INC, a
California Corporation; MKRTCHYAN INVESTMENTS, L.P., a California Limited
Partnership; ARTHUR ARISTAKESYAN, an individual; PHANTOM PROPERTIES, LLC, a
Nevada limited liability company; DMITRI LIOUDKOVSKI, an individual; LDI VENTURES,
LLC., a California limited liability company,

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>NAZARET KECHEJIAN | BANKRUPTCY CASE NO.<br>1:18-bk-10828-MT | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>San Fernando Valley | NAME OF JUDGE<br>Maureen Tighe |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Stella Havkin | | |
| DATE<br><br>9/1/2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Stella Havkin | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.


American LegalNet, Inc.
www.FormsWorkFlow.com

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Stella Havkin, #134334<br>Havkin & Shrago Attorneys at Law<br>5950 Canoga Avenue, Suite 400<br>Woodland Hills, CA 91364<br>Telephone 818 999-1568<br>Facsimile 818 305-6040<br>stella@havkinandshrago.com<br><br>*Attorney for Plaintiff* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| In re:<br>NAZARET KECHEJIAN,<br><br><br>Debtor(s). | CASE NO.: 1:18-bk-10828-MT<br><br>CHAPTER: 13<br><br>ADVERSARY NO.: |
|---|---|
| NAZARET KECHEJIAN,<br><br><br><br><br>Plaintiff(s)<br>Versus<br>GREG MKRCHYAN, an individual, aka GARIK MKRCHYAN, aka GHEGHAM MKRTCHYAN, aka GHEGHAM TER-MIKRTCHYAN; KIRILL KIZYUK, an individual, PRIME CAPITAL GROUP, INC, a California Corporation;   and see Attachment<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING<br>[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____    **Address:**
> **Time:** _____    ☐ 255 East Temple Street, Los Angeles, CA 90012
> **Courtroom:** _____    ☐ 3420 Twelfth Street, Riverside, CA 92501
>     ☐ 411 West Fourth Street, Santa Ana, CA 92701
>     ☐ 1415 State Street, Santa Barbara, CA 93101
>     ☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ATTACHMENT TO SUMMONS**

Additional defendants:

MKRTCHYAN INVESTMENTS, L.P., a California Limited Partnership; ARTHUR
ARISTAKESYAN, an individual; PHANTOM PROPERTIES, LLC, a Nevada limited liability
company; DMITRI LIOUDKOVSKI, an individual; LDI VENTURES, LLC., a California
limited liability company.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
    Deputy Clerk

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.